Our first case this morning is Henderson v. Adams. Mr. Fischer. Thank you, Your Honor, and may it please the Court. Under Indiana law, parental rights arise in two ways, a biological relationship to the child or an adoption decree. The district court in this case created a new third way, marriage to the birth mother, but it appears to be a right created only for female same-sex couples. In our view, that order creates an inequality that did not exist before and undermines the rights of biological fathers and their children. As a matter of Indiana statute, what we have when a child is born to married parents is a factual presumption that the husband, if it's an opposite-sex couple, that the husband is the biological father of the child. But that is rebuttable. It's rebuttable by a paternity case, by a genetic test, and it is not overridden by a birth certificate that happens to list the husband as the father. How does Indiana law treat the paternity rights of sperm donors as a general matter? We don't have a statute, unlike many states. And I think to follow the statutes literally, what is supposed to happen at the birth certificate stage is that the mother is supposed to disclose that she's not married to the father of the child. That's, I think, our understanding of the literal treatment of it. And then if the husband wants to become a legal father of that child, he needs to adopt. That's following the statute to their logical conclusion. But there is no statute that addresses it directly. There's a uniform act that some other states have adopted, but Indiana has not gone that route? Indiana has not. Okay. Don't have that. And I think that makes us very different from some of the other states where we have cases where there are injunctions in the wake of a Burgeville that say you must treat the same-sex couples the same way as the opposite-sex couples in the case of a statute that creates that parental relationship, which makes complete sense. It follows if that is a benefit, something that accompanies the marriage, then that's what you should do. But our view of the Indiana law and the way it's written is that it is merely a factual presumption. It doesn't actually create the parental rights. It is subject to being disproven by factual proof. Now, here we have a district court that looked at the situation of same-sex couples and came to a similar conclusion that, well, we're going to presume a more broadly defined parental right, but still subject that to disproof through a genetic test in a paternity action, which I confess I think doesn't really hold up very well together, because if you're assuming or presuming parental rights based on marriage, it's not clear why a genetic test would be useful to override that. We think that if we're going to stick with the Indiana system where it's biology or adoption, then the proper way to look at it is you have a different situation for opposite-sex couples than same-sex couples. And there's really no reason to go with something that might be the birth mother's preference at the beginning rather than biology. So I think I want to stress here that the birth certificate does not actually establish the paternity, and the birth certificate question is an independent issue from the parental rights that exist. The parental rights either exist or they don't. The birth certificate doesn't determine that. The birth certificate is meant to reflect the parental rights that exist rather than to create them. And I think that is something that perhaps is important to bear in mind as we look at the relationship between the two. It's evidence of parentage, the birth certificate. Well, I mean, it might be in some circumstances evidence as to whom and under what circumstances. It cannot, for example, in a paternity action, override the genetic test, which is the critical piece of the paternity action. Right. My point is only that it doesn't create parental rights. It's evidence of parentage. I think that's right. I think that's right, especially if we're talking about it in any sort of ordinary everyday context. Somebody would look at that and probably think that that's, you know. But in many circumstances, if it is based on a mistaken understanding, a mistake of fact that goes undetected, that is not in itself creating the parental rights. Mr. Fisher, what's the state of the birth certificate form today? Has there been a change?  The system itself, the official system created by the Department of Health, is an online system that is in the midst of being overhauled and in light of the injunction will eventually refer to parent one and parent two. What it says right now, because it would be too expensive to just change this one piece in advance, is it still says mother and father on the front end. But the information gets put in for both women, in the case of two women who are married. And then the birth certificate that comes out says the names of the parents, parent one and parent two. It doesn't say mother and father. So that's the way it would come out today? Right, right. That's in light of the injunction. That's right. In the case of an adoption, the original birth certificate, whether in an out-of-wedlock or in-wedlock birth situation, is retained in the system. Right. But a second birth certificate is issued in the name of the adoptive parents. That's right. That's right. It's essentially amended. But the record of biological parentage is retained. It's retained. It's retained, yes. And what's the rationale for that? Well, I think the basic rationale is to keep a record of, you know, if there's a need for it for health history or medical history, for genetic history, I think the understanding is it's sort of a good practice to keep the basic information about the origins of the child that is born as opposed to just pretending that it didn't ever happen. Most other states do it that way as well in the case of adoption? I can't say I'm aware, but I think that there is a general understanding that keeping some sense of medical history available is appropriate. Well, those are the main points I wanted to bring to the Court's attention today, and I'm happy to answer any further questions, but otherwise I'll just reserve the remainder of my time. All right. Thank you, Mr. Speaker. Ms. Celestino-Horseman? May it please the Court. When a birth mother delivers a child conceived by artificial insemination and she's married to a man, her husband is presumed to be the parent of the child, and he is identified on the birth certificate as the parent of the child, even though he has no biological relationship with the child whatsoever. When a birth mother delivers a child conceived by artificial... Counsel? Yes, Your Honor. I gather that Indiana denies that that's what's supposed to happen. It looks like underlying this case is a serious dispute about what Indiana law actually provides. Why should we accept your view of how Indiana's system works over the state's own view? Well, Your Honor, this is what happens. I'm perhaps not understanding your question. Mr. Fisher just said in his brief, spends a great deal of time saying when a child is born by artificial insemination in a marriage, the mother is supposed to state that the husband is not the father, and after that, if the identity of the sperm donor is revealed, that person is listed on the birth certificate. The district judge said, as I understand it, didn't disagree with Indiana that that's how the system is supposed to work. The district judge said many mothers will lie in response to that question and identify the husband as the father, even though the husband didn't supply the sperm. Now, that led me to think that your argument is that a state law becomes unconstitutional because people subject to the state law don't follow it, which would be a very difficult position to take. Your Honor, in this particular case, the... I'm not interested in this particular case. I'm interested in how the state statute is supposed to work. The way the state statute is supposed to work, Your Honor, is that we believe is that it's working the way it is now. When a child is born to a man and a woman, that he is presumed to be the parent of the child. What we're saying then is we want to logically extend that, given the advances in science and our society. So it sounds like we just have a fundamental dispute about what the Indiana law now provides. I don't think there's a fundamental dispute about that, Your Honor. The Indiana... You are saying the opposite of Mr. Fisher about what's supposed to happen in a case of a married couple where the child is conceived by artificial insemination. Your Honor, we... And if you don't agree about that, you're having a disagreement about how state law is supposed to operate. Your Honor, I suppose in that sense that we are, but what we're also saying is that Indiana knows this is happening and it allows it to happen. Yeah, well, then we're in... As I understand the law, saying that something violates the Equal Protection Clause requires disparate intent by the state. It is not the same thing as saying a state knows that somebody else is violating the law and therefore the law becomes unconstitutional. Your Honor, in an over-inclusive argument, what we're saying is that the benefit that the state is giving to married men and women is outweighed by the harm that is resulting... There's no benefit being conferred here. The statute creates a paternity presumption that just is impossible in a same-sex marriage situation. Well, Your Honor, that's if one presumes that parenthood is still defined. It's not a parenthood statute. It's a paternity statute. A paternity presumption is impossible in a same-sex marriage situation. So we just don't have any kind of discrimination going on here at all. Well, Your Honor, but what we do have is that under Obergefell, the incidents of marriage that are accorded to a married man and woman must also be accorded... This is a paternity presumption. It's physically impossible in a same-sex marriage. But what that presumption statute does is it presumes something that is physically impossible Right, so what you're asking for is a redefinition of parenthood. You're not asking for... I mean, the state cannot accord same-sex couples the benefit of a paternity presumption. It's physically impossible. So you're asking for a redefinition of the term parent under state law. And you haven't challenged that statute, as I understand it. That's 180510, or 0.510. Your Honor, parenthood is no longer... Biological or adoptive, either or. Right, under that statute. You want this third category. No, this isn't a third category, though, Your Honor. This is an incident of marriage that's being presumed. Now, yes, it is true that if you look at it solely in terms of our traditional understandings of biological relationships and sexual intercourse, then that would be the case. But that is not under Obergefell, under Baskin, under Levin, under Gardenauer. Parenthood and families are no longer defined by simply having a married man and woman and their children. Those were marriage cases. Those weren't parenthood cases. But parenthood is part and parcel of marriage. Let me give you another marriage case that parties aren't covering. You have a male-male marriage in Indiana. The couple hires a surrogate mother. One of the parents, one of the members of the marriage, donates sperm, and a child is born to the surrogate mother. Who should be on the birth certificate? Your Honor, under Indiana law, you can't enter a contract for surrogacy. Now, if... Forget about that. All right. Who should be on the birth certificate if that happens? If they can find a woman to carry, then the names that go on the birth certificate are the birth mother. If she is married, it would be her husband. But he can disestablish paternity prior to the child's birth. But the second husband... I don't understand why, on your view, the answer isn't father number one and father number two, the two members of the married couple. Because under Indiana law, father number two, who is not the sperm donor, would have to adopt the child. And under Indiana law, a child cannot be adopted before birth. Look, it is... I don't want to be the one to tell you this, but Obergefell says that there can't be any sex discrimination. And you're now saying that there must be sex discrimination. In the female-female marriage, the right answer is mother number one and mother number two. In the male-male marriage, the right answer on the birth certificate is surrogate mother, sperm donor, followed by adoption. On your view, doesn't there have to be a detical treatment of the male-male marriage and the female-female marriage? Your Honor, possibly yes, but not under the arguments that we're making regarding this presumption. We can't ignore the logical implications of your arguments, and you seem to want to. No, Your Honor. Under the presumption statute, the requirement is the man must be married to the birth mother. That is the statute. So when you have two men who are married, one of them cannot be married to the birth mother. Now, if someone wants to challenge that under substantive due process or something else, that is a different argument than what we have here today, because under today's argument, what we're arguing is that parenthood is premised upon marriage.  What if the sperm donor is German? Is German, Your Honor? German. Okay. I ask that because Germany treats citizenship as following biological parentage, so that a birth certificate revealing that mother and any German citizen confers German citizenship on the child. Your view apparently extinguishes citizenship by requiring a misrecording of who the father is. Can that be right? Your Honor, you're saying that if the sperm? In the United States, the norm is that anybody born in the United States is a U.S. citizen. Most countries in the world do not follow that rule. They don't treat birth within the territory as a grant of citizenship. They treat biological descent as the grant of citizenship, so that correctly recording who the parents are is essential to determining the citizenship of the child. Your view seems to be that it is unconstitutional for Indiana to correctly record the parent and therefore the citizenship of the child. That's a very big loss for a child. No, Your Honor, that is not our view. In these cases where you have artificial insemination, the sperm donor is either not going to... It doesn't matter to German law. But, Your Honor, it's important for birth certificates because if the sperm donor... Yes, but that's my problem. Judge Sykes made this same point. One really needs to distinguish what's on a birth certificate if it's supposed to be recording facts of biology with facts about parental rights. Who has parental rights in the child? Who has parental duties in the rights? These are logically separate things, and one of the worries here is that this case seems to be an attempt to blend the two, but blending them may be very hard in circumstances where you've got a male-male couple or where you have a couple, one of whom has a foreign citizenship. Your Honor, first of all, a birth certificate is a legal document. It is not a medical document, nor is it intended to be a medical document. It is a legal document that establishes legal relationships. Secondly, who goes on that birth certificate? No, the law establishes legal relationships. The birth certificate does not. The birth certificate is just evidence of parenthood. But it is a... It's not evidence of parenthood. It's evidence of biological parentage until there's an adoption. But who goes on that birth certificate is in control of the people who conceive the child. If it is a sperm donor and they have entered a sperm donor agreement, then under Indiana law, that remains confidential. That sperm donor's name cannot be released, and he releases all rights. So whether he's German or wherever he's from, his name does not go on the birth certificate by his choice and by the choice of the mother. If the sperm donor is known, and, again, there is a sperm donor agreement... Well, that's where you and Mr. Fisher are, just in irreconcilable disagreement about how the Indiana system is supposed to work. In terms of sperm donor agreements, Your Honor, we've cited the cases in there where they are recognized. The one case cited by Mr. Fisher was a case where they had a sperm donor agreement that was covered one time... I have one more question. Does anything in this case depend on conception being via artificial insemination rather than sexual intercourse? For the purposes of our case, it's all by artificial insemination. Does anything logically depend on it? You have a female-female marriage, and one of them conceives a child via sexual intercourse. What is supposed to be on the birth certificate, on your view? In our view, it's a child born to the two women, so the two women's names should go on... Mother number one and mother number two, right? So nothing depends on artificial insemination. No, Your Honor. Well, it depends on artificial insemination because we're saying that these children were conceived by that. In terms of biology, Your Honor, one of our couples... Because I can keep coming, right? Mother and father are married at the time of the intercourse and the conception of the child. They then divorce. Mother marries another woman. Child is born. What's supposed to be on the birth certificate? Child is born... Child is born after the new marriage. After the new marriage, but her husband is the father of the child? Her former husband is the father. Well, then, in that case, Your Honor, he would go on the birth certificate. What would happen is she's married. Why? She's married, so what would happen under Indiana law is that the birth mother fills out the live birth worksheet. She's asked, Are you married to the father of your child? In that particular case, she would say no, and her husband would go on the birth certificate, whoever she says. She doesn't have a husband. She has a wife. Well, her former husband, because he is the father of the child. Now, if she wants to say... Then I don't understand why you don't agree with Mr. Fisher that the sperm donor should be on the birth certificate. Because, Your Honor, if the agreement between the parties is that the sperm donor is not going to be on the birth certificate, then that is the law that governs. I mean, that's well recognized in every state in the country, is that you can conceive a child via artificial insemination with an anonymous sperm donor or even a known sperm donor, and you can have a contract that says that he is not to go on the birth certificate. And... Mr. Fisher speaks about the change that's coming about as a result of the injunction. What does that do if that is, in fact, in place where it can have mother 1 and mother 2? What does that do to your case? Nothing. That would be following through on what the injunction is currently ordering the state to do. Is that what you want? Yes. You just want that change in the birth certificate? In the birth certificate. We acknowledge in our briefs that the birth certificate itself doesn't create parental rights, but what it does do is it allows you to go out and operate in the world and to raise your child and make decisions regarding that child by showing that birth certificate. The presumption, it may be a presumption, an evidentiary presumption, but it is also a substantive rule of law because that's what it does, is it allows who's ever named on that to make these decisions regarding children. Otherwise, you have to carry around with you a power of attorney and other documents so that you can make these decisions for your child. Do you have to carry around also the agreement from a sperm donor for confidentiality as well as the birth certificate in the new form? No, you don't, Your Honor. Well, how can you be sure that you're fully protected if you don't also have that confidentiality agreement somehow lodged in the history? Your Honor, you don't have to carry that document with you. Well, you speak of carrying the birth certificate around. I'm suggesting if you want this full protection or what you call equal protection, don't you need that other document? Your Honor, carrying the birth certificate with you is like when you go to register at a school for your after-school sports, you have to show them a birth certificate or getting a passport. The other document showing the confidentiality is one that you would keep at home and keep it in a safe place in case it's ever challenged or you ever need it, but it's not something you would have to carry with you because you're on the birth certificate. I mean, Your Honors, society and science have changed significantly since marriage began. Under Indiana law, in Levin, the Indiana Supreme Court held that when a married man and woman knowingly and voluntarily consent to the conception of a child via artificial insemination, both of them are the legal parents of the child. And by the way, in Levin, the husband was listed on the birth certificate. Now, in February of this year, the Indiana Appellate Court in the Garden Hour decision applied the same rule to two legally joined women who also agreed to conceive a child by artificial insemination, holding them, they both are the legal parents of the child. And Your Honor, I also would like to state that when we were here before this Court in Baskin v. Bogan, a case regarding same-sex marriage, the state acknowledged in its opening brief that the presumption of parenthood is a legal benefit that is exclusive to marriage. So a benefit of marriage that is exclusive to marriage is an incident of marriage. And that's in their brief at Document 34 at page 15 in 14-2386. Now, we know that these statutes are incidents of marriage because the first thing that you have to do is you have to be married. And historically, parenthood has always been an incident of marriage because before DNA testing, before assisted reproductive technology, before same-sex marriage, parenthood was premised upon a man and a woman. Paternity of the marital child is a presumption, an incident of marriage, not parenthood. Beg your pardon? Paternity. You keep evading the actual terms of the statute. It's a paternity presumption. Well, and I guess, Your Honor, and that goes to the heart, which is what I have been trying to say, is that the notion, I mean, paternity encompasses, I mean, you wave the word father, you say the word paternity, it means a biological relationship. That's what the state considers parenthood, biological parentage or adoptive parentage. And what we are saying, Your Honor, is that it is now, after the advent of Baskin, Obergefell, Levin, and Gardner, is that it is no longer. Levin is a estoppel case. Levin is an estoppel case, an equitable estoppel case. It has no application here. Your Honor, but Levin said that they created that presumption by knowingly involuntary consent. It has no application here. It's about estoppel. But, Your Honor, if you look back, that parenthood didn't arise at the time of the dissolution. They said you have to look back to the time of the agreement upon conception. So that means when the child was born, the parenthood was there. They're just now saying, okay, for purposes of this divorce, we're going to acknowledge what previously happened. I mean, parenthood now is much more than being a mother and a father. We have two mothers. We have two fathers. Marriage is much more than just being a man and a woman. Indiana has no artificial insemination statutes. It has nothing but this general presumption of parenthood. If that's the argument you wish to make, you have to take it to the State Legislature and get them to amend the definition of parent. Because right now it's biological parentage. In other words, the biological mother or father, that's specifically what the statute says, or adoptive parents. Well, Your Honor, in the case of In Re A B, which we cited in our brief, in 2004, the Indiana appellate court did exactly that. It asked the Indiana legislature to please take this issue up, because it was dealing with issues of two women conceiving a child by artificial insemination. Right. And did the legislature take that issue up and redefine parenthood to include? No, it did not, Your Honor. The definition that you're advancing here? No, Your Honor. Right. So you have to work with the statutory scheme that you have. Right, Your Honor. And to claim that the Constitution requires Indiana to change its definition of parenthood from the biological one goes well beyond the marriage cases. But, Your Honor, your question was, shouldn't we leave this to the legislature? And what I'm telling you is they had the opportunity in 2004. They were asked to do it. In In Re A C in 2013, they were asked to do it, and they didn't do it. In 2014, same-sex marriage became the law. It is now 2017, and they haven't done it. Right. Those are marriage cases. They're not paternity cases. But, Your Honor, that's what we're saying. You cannot separate. You can't overcome biology. If the state defines parenthood by virtue of biology, no argument under the Equal Protection Clause or the Substantive Due Process Clause can overcome that. Your Honor, with all due respect, we maintain that parenthood is no longer defined by biology. Okay. Then you have to take that. That's a policy argument to take to the legislature. And which I think I've answered that question. And so, Your Honor, all we're asking is that ‑‑ I see my time is up. All we're asking is that our clients, if the state's going to extend protections to children conceived by artificial insemination and born to a married man and woman, then all we're asking is that these same protections be extended to the children conceived by artificial insemination and born to two married women. Thank you. Thank you. Mr. Fischer? Thank you, Your Honor. I don't have much to add, just a couple of quick points. I think on the issue of the Levin case and Garden Hour, again, we agree that that's about equity and really nothing more. And it, if anything, demonstrates the kind of equality approach by the Indiana courts when it comes to addressing equity. With respect to the, for lack of a better term, enforcement issue, there's nothing in the record that shows what happens in the scenarios that Ms. Stellastine Horstman is talking about, only assumptions by the district court. And with respect to agreements for the enforceability of donor agreements, we have two cases that don't really complete the picture for us. One is from the Indiana Court of Appeals. And even that case seems to say that there are sometimes when it might be enforceable, sometimes when it may not. The Indiana Supreme Court hasn't reviewed that issue directly, so I don't think we have any definitive understanding. And the rights at issue here are the rights of the child, really, to support from the biological parents. Indeed. And there's a statute that says that the parents cannot disclaim, in that sense. They cannot waive those rights. Right. And the constitutional right to raise a child is also based on biological parentage. It is. It is. It is. We agree. And the Supreme Court has acknowledged that from both directions, as you state. So there could be many circumstances where going that direction would undermine those rights and create other constitutional problems. So I think that's really all I have, unless there are further questions. Thank you. All right. Thanks to all counsel. The case is taken under advisement. Court will proceed to the second case.